J-S09020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAWRENCE KINGSLEY | : | |
| | : | |
| Appellant | : | No. 593 MDA 2017 |

Appeal from the Judgment of Sentence February 27, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-SA-0000262-2014

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY MCLAUGHLIN, J.:                **FILED MAY 03, 2018**

Lawrence Kingsley appeals from the judgment of sentence entered following his summary conviction for failing to stop at a stop sign, 75 Pa.C.S.A. § 3323(b). We affirm.

On August 22, 2014, Pennsylvania State Trooper Trisha Campbell pulled over Kingsley for failing to stop at the stop signs located at the intersection of State Route 382 and Eisenhower Boulevard. On October 30, 2014, the magisterial district court found Kingsley guilty of failing to stop at a stop sign. Kingsley filed an appeal, and the trial court conducted a summary appeal hearing on two days approximately 1 year and 9 months apart.

Following the first day of the hearing, June 29, 2015, the trial court did not immediately set a date for the second day of the hearing. On July 20, 2015, Kingsley filed a Motion to Strike his date of birth from the record. The

_____

* Retired Senior Judge assigned to the Superior Court.

Commonwealth filed a response and Kingsley filed a Renewed Motion to Modify Order and to Compel Service. On March 31, 2016, the trial court denied the Motion to Strike and the Renewed Motion to Modify Order and Compel Service. In this order, the trial court scheduled a second hearing day for May 9, 2016. On April 11, 2016, a notation on the docket states the mail sent to Kingsley containing the March 31, 2016 order was returned as undeliverable. Kingsley did not attend the May 9, 2016 hearing. On May 13, 2016, the trial court affirmed the judgment of the magisterial district court.

On July 20, 2016, Kingsley filed a Motion to Open Judgment. On December 6, 2016, the trial court vacated the May 13, 2016 order and scheduled the second day of the hearing for February 27, 2017.

At the hearing, Trooper Campbell testified that she witnessed Kingsley "c[o]me through th[e] intersection and fail[] to stop at the stop sign before merging onto Eisenhower Boulevard." N.T., 6/29/15, at 8. She further testified that the stop sign was not improperly installed. *Id.* at 11.

Kingsley presented the testimony of Jason Hershock, a Pennsylvania Department of Transportation ("PennDOT") employee, and Frank Williamson Jr., the Director of Public Safety and Assistant Township Manager for Lower Swatara Township, Dauphin County. Hershock testified that the stop signs at the intersection were 36 inches by 36 inches, the speed limit was 55 miles per hour before the exit ramp, and there was no stop sign ahead sign. N.T., 2/27/17, at 17-18. Further, he testified that PennDOT had a project planned that would realign the intersection at issue. *Id.* at 33. On cross-examination,

Hershock testified that the stops signs were in compliance with regulations "from what [he] see[s]." *Id.* at 45.

Williamson testified regarding local ordinances and regarding the shrubbery on the side of the road. On cross-examination, Williamson testified that Route 283 and Eisenhower Boulevard are state highways. *Id.* at 67.

Kingsley testified that he returned to the intersection and "saw signage that was blocked by a long truck," which PennDOT should have anticipated. He stated the signage was not in the proper position and not sufficiently visible to a motorist. *Id.* at 70. He stated that the project PennDOT planned at the intersection would change the stop sign to a yield sign. *Id.* at 71. He also entered into evidence exhibits, including photographs of the intersection.

The trial court found Kingsley guilty, reasoning that Kingsley failed to stop at the stop signs and that "the stop sign[s], from all indications to the Court, w[ere] properly placed" when placed by PennDOT authorities. *Id.* at 79. The court imposed a $25.00 fine and required Kingsley to pay court costs.

Kingsley raises the following issues on appeal:

> 1. Does § 3111(b) of the Vehicle Code afford an absolute defense to the allegation in question?
>
> 2. In respect to this statute, was there sufficient proof that the stop signs [were] out of position and insufficiently visible?

3. If the signs were out of position and insufficiently visible, does it matter whether PennDOT or the local township had ultimate control over traffic regulation at the intersection in question?

4. Was the lower court remiss in failing to acknowledge that PennDOT's decision to reconstruct the intersection in question, though not yet implemented, tends to support [Kingsley's] contention that there were deficiencies in the signage and roadway design?

5. Where the infraction, if there was one at all, was only technical, did the Commonwealth meet its burden of proof in showing criminal intent?

6. Did the court below fail to recognize that the alleged infraction, although regrettable, was a *de minimis* offense which should have been excusable under the circumstances in question[?]

7. Do other irregularities in the proceedings show unacceptable prejudice by the court below?

8. Should [Kingsley] and [the] general public be afforded the same protection against publication of personal information which the Commonwealth Court has granted to state employees?

Kingsley's Br. at 3-4 (suggested answers omitted).

Kingsley's first three arguments maintain that he established an affirmative defense to the Section 3323 violation. He argues the stop signs' placement and size did not conform with the requirements adopted by the Vehicle Code. He also contends the stops signs were not visible to motorists, and that the trial court erred in failing to consider PennDOT's plans to change the sign at the intersection from a stop sign to a yield sign. In these claims, Kingsley argues, in effect, that the Commonwealth failed to present sufficient evidence that he violated Section 3323.

"Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Ballard***, 80 A.3d 380, 390 (Pa. 2013) (citation omitted). Specifically, we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt. ***See Commonwealth v. Dale***, 836 A.2d 150, 152 (Pa.Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Brown***, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*) (quoting ***Commonwealth v. Hutchinson***, 947 A.2d 800, 805–06 (Pa.Super. 2008)).

Further, "[a]s an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." ***Commonwealth v. Kinney***, 863 A.2d 581, 584 (Pa.Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa.Super. 2007) (quoting ***Commonwealth v. Frisbie***, 889 A.2d 1271, 1274–75 (Pa.Super.2005)).

Section 3323 provides:

Except when directed to proceed by a police officer or appropriately attired persons authorized to direct, control or regulate traffic, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line.

75 Pa.C.S.A. § 3323(b).

Section 3111 of the Vehicle Code states, in relevant part:

(b) Proper position and legibility of device.--No provision of this title for which official traffic-control devices are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official device is not in proper position and sufficiently legible to be seen by an ordinarily observant person. Whenever a particular section does not state that official traffic-control devices are required, the section shall be effective even though no devices are erected or in place.

(c) Presumption of authorized placement.--Whenever official traffic-control devices are placed or held in position approximately conforming to the requirements of this title, the devices shall be presumed to have been so placed by the official act or direction of lawful authority, unless the contrary shall be established by competent evidence.

(d) Presumption of proper devices.--Any official traffic-control device placed or held pursuant to the provisions of this title and purporting to conform to the lawful requirements pertaining to such devices shall be presumed to comply with the requirements of this title, unless the contrary shall be established by competent evidence.

75 Pa.C.S.A. § 3111(b)-(d). Accordingly, Section 3111 provides a defense to

Section 3323 if the stop sign, a "traffic control device," is "not in proper

position and sufficiently legible to be seen by an ordinarily observant

person." It, however, also establishes two presumptions, including a

presumption that the traffic control devices comply with the Vehicle Code,

unless the defendant establishes otherwise. *See Commonwealth v. Gernsheimer*, 419 A.2d 528, 530 (Pa.Super. 1980).

In *Commonwealth v. Abramson*, 4 Pa.D.&C. 3d 368, 369-70 (Montour Cnty. C.P. 1977), relied on by Kingsley, the Court of Common Pleas found the defendant not guilty of failing to stop at the stop sign because the defendant established the stop sign was bent at an angle, the intersection had poor lighting, and the traffic markings were inadequate and confusing. In *Abramson*, the defendant testified that he exercised caution while driving, but had difficulty following the road because of poor traffic markings and lighting conditions. He said he stopped at one stop sign, but did not see the second, which was located a short distance from the first. *Id.* In addition, the proprietor of a Sunoco station, located at the intersection at issue, testified that the stop sign was struck by trucks on numerous occasions and was now at an angle, which made it difficult to see. *Id.* at 370. Further, he stated that most drivers do not see the stop sign, and go through it without stopping, and agreed that the lighting conditions were poor and the traffic markings were inadequate and confusing. *Id.*

Here the Commonwealth established that Kingsley failed to stop at the stop signs before merging onto Eisenhower Boulevard. Further, Kingsley presented insufficient evidence to overcome the presumption that the placement of the stop signs was proper. Unlike in *Abraham*, the stop signs were not at an angle that prevented drivers from seeing them. In addition, although there was evidence the stop signs were after a curve, Kingsley did

not establish that this placement prevented drivers from seeing the stop signs.

In addition, that PennDOT may have plans to change the signs at the intersection does not change the outcome. At the time of the incident, stop signs existed at the intersection, and Kingsley failed to stop.

Further, the trial court did not err in concluding that because the roads were state highways, and Kingsley failed to establish that the local government controlled the area in question, PennDOT, and not the local government, controlled the road. 75 Pa.C.S.A. § 6122(a) (governing authority to erect traffic-control devices); 67 Pa.Code § 212.5 (governing installation and maintenance of traffic control devices).

In his next two claims, Kingsley maintains that the Commonwealth failed to establish he had criminal intent to violate Section 3323 and it was a *de minimis* infraction.

To establish a person violated Section 3323, a summary offense, the Commonwealth need not establish a defendant had a criminal intent to fail to stop. **See** 75 Pa.C.S.A. §3323 (stating drivers "shall" stop at stop signs and not including *mens rea* requirement); 18 Pa.C.S.A. § 305(a) (culpability requirements in Section 301 and 302 inapplicable to summary offenses and offenses defined by a statute other than the Crimes Code). Therefore, the trial court did not err in failing to address whether Kingsley intended to violate Section 3323.

Section 312 of the Crimes Code provides that the Commonwealth shall dismiss a prosecution, "having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances," if it finds the conduct of the defendant:

> (1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
>
> (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
>
> (3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S.A. § 312(a). Here, as discussed above, the Commonwealth established Kingsley did not stop at the stop signs, and the stop signs were properly installed. This violation was not within a customary license or tolerance of Section 3323. Further, the conduct threatened the harm sought to be prevented, and there are no "other extenuations" to justify finding that the offense was *de minimis*. Therefore, the court did not err in failing to dismiss the case.

Kingsley next claims that irregularities in the proceedings show the trial court was prejudiced against him. The "irregularities" included that the court allegedly failed to provide notice of a hearing to Kingsley, and, although the trial court later re-instated the appeal, it initially dismissed it when he failed to appear for the hearing. Kingsley has waived this claim

- 9 -

because he did not raise it below. Pa.R.A.P. 302 (claims waived if not raised before trial court). Further, although there was a significant delay between the traffic stop and the ultimate resolution of the case, there is no indication that the delay prejudiced Kingsley or violated his rights. Upon learning that Kingsley had not received notice of the hearing, the trial court vacated the order dismissing the appeal and re-scheduled the hearing. Kingsley was then able to present testimony and evidence in support of his defense.

Kingsley also claims that the punishment was disproportionate to the crime, particularly where he had expenses for filing and witness fees, research, transcripts, photocopying, and travel expenses. Kingsley waived this claim by failing to raise it before the trial court. Pa.R.A.P. 302 (claims waived if not raised before trial court). Further, the fine of $25.00 plus court costs was not disproportionate to the violation and the other costs Kingsley cites cannot properly be considered "punishment."

In his final claim, Kingsley argues that his right to privacy was infringed when the trial court denied his motion to strike his date of birth from the record. Even assuming, purely for argument's sake, that Kingsley had a right to privacy in his birthday date, that right is overcome by the Commonwealth's substantial need. Birthdates are on dockets to assist in identifying the correct individual, and the trial court did not err in denying the motion to strike it.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2018